UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | No. 3:22-00117 |
| --- | --- | --- |
| v. | ) | |
| | ) | 18 U.S.C. § 286 |
| [1] BRANDON MILLER | ) | |
| [2] JARIUS BRUNSON | ) | |
| [3] MARTINAS NORVELL | ) | |
| [4] AAZJAE KIRK | ) | |
| [5] BENJAMIN BRITFORD | ) | |

# INDICTMENT

THE GRAND JURY CHARGES:

## PURPOSE OF THE CONSPIRACY

1. Beginning not later than January 2021, the exact date being unknown to the Grand Jury, through on or about April 28, 2021, in the Middle District of Tennessee and elsewhere, **[1] BRANDON MILLER, [2] JARIUS BRUNSON, [3] MARTINAS NORVELL, [4] AAZJAE KIRK, and [5] BENJAMIN BRITFORD,** and other persons known and unknown to the Grand Jury, knowingly and willfully entered into an agreement, a combination, and a conspiracy with each other to defraud the United States Small Business Administration by obtaining and aiding to obtain the payment of a false, fictitious, and fraudulent claim, in violation of Title 18, United States Code, Section 287, in the manner and means as follows:

## MANNER AND MEANS

1. <u>The Paycheck Protection Program:</u> The United States Small Business Administration ("SBA") is an agency within the executive branch of the United States government.

It is a function of the SBA to provide support to small businesses and entrepreneurs. It is further a mission of the United States to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, signed into law in March 2020, established several temporary programs in response to the COVID-19 pandemic. One of these new programs was the SBA Paycheck Protection Program ("PPP"), which is a loan designed to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA will forgive all or part of PPP loans if at least 60% of the proceeds are spent on payroll costs for at least eight weeks after disbursement and borrowers submit documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utilities. Interested applicants applied through an approved SBA lender and the loans were one hundred percent guaranteed by SBA.

3. The PPP application process requires applicants to submit a Borrower Application Form through an SBA-approved financial entity. The application contains information as to the purpose of the loan, average monthly payroll, number of employees and background of the business and its owner, including questions relating to criminal history. Applicants also are required to make good faith certifications, including that they have read the application and that all the information provided in the application and all supporting documents is true and accurate in all material respects, that economic uncertainties have necessitated their loan requests for continued business operations, and that they intend to use loan proceeds only for the authorized purposes. Those permissible purposes included payroll costs, interest on mortgages, rent, and utilities.

4. It was part of the conspiracy that **[1] BRANDON MILLER** and **[2] JARIUS BRUNSON** would recruit individuals who would willingly provide their personally identifiable information, such as name, address, social security number, and their banking information, so a fraudulent PPP loan application could be submitted on their behalf.

5. It was further part of the conspiracy that **[1] BRANDON MILLER** directed **[2] JARIUS BRUNSON** to steal and otherwise obtain identification cards of other individuals and otherwise obtain the personally identifiable information of other individuals so those identification cards and personally identifiable information could be provided to **[3] MARTINAS NORVELL**, and others known and unknown to the Grand Jury, for the purpose of submitting fraudulent PPP loan applications.

6. It was further part of the conspiracy that **[1] BRANDON MILLER** and **[4] AAZJAE KIRK** attempted to acquire the necessary materials and equipment to create and submit fraudulent PPP loan applications.

7. It was further part of the conspiracy that **[4] AAZJAE KIRK** and **[5] BENJAMIN BRITFORD** coordinated the submission of a fraudulent PPP loan on behalf of **[4] AAZJAE KIRK**.

8. It was further part of the conspiracy that **[4] AAZJAE KIRK** and **[5] BENJAMIN BRITFORD** discussed how **[4] AAZJAE KIRK** could obtain the necessary materials and equipment to submit fraudulent PPP loans and create false identification documents to facilitate the submission of fraudulent PPP loans.

9. It was further part of the conspiracy that **[3] MARTINAS NORVELL** and **[5] BENJAMIN BRITFORD** submitted fraudulent PPP loans on behalf of other members of the conspiracy.

OVERT ACTS

10. In furtherance of the conspiracy, and to accomplish its object and purpose, at least one co-conspirator committed and caused to be committed, in the Middle District of Tennessee and elsewhere, at least one of the following overt acts, among others:

A. Beginning not later than February 2020, the exact date being unknown to the Grand Jury, in the Middle District of Tennessee and in Kentucky, **[1] BRANDON MILLER** and **[2] JARIUS BRUNSON** recruited R.E., an acquaintance of **[2] JARIUS BRUNSON**, to provide personally identifiable information and banking information to them. **[1] BRANDON MILLER** informed R.E. that he had unnamed associates who could assist R.E. in obtaining a PPP loan from the United States government.

B. R.E. sent pictures via text message to **[2] JARIUS BRUNSON** with the information that **[1] BRANDON MILLER** requested. These items included R.E.'s Social Security card, State Identification Card, and a February 2020 bank statement from R.E.'s credit union bank account. **[2] JARIUS BRUNSON** forwarded R.E.'s pictures of her personally identification information listed above and R.E.'s email address to **[1] BRANDON MILLER** via text message on or about April 26, 2021.

C. **[1] BRANDON MILLER** forwarded R.E.'s personal and banking information to **[3] MARTINAS NORVELL**. In turn, **[3] MARTINAS NORVELL** submitted a PPP loan application using R.E.'s information to lender Amur Equipment Finance, Inc on or around May 3, 2021, which is the same financial institution **[3] MARTINAS NORVELL** used for his own previous personal PPP loan submission. **[3] MARTINAS NORVELL** then sent a screenshot of an open Amur Equipment

Finance, Inc. dashboard webpage displaying R.E.'s name and associated PPP loan application with a status of "Submitted to Verifier." The loan application contained materially false information, including a statement that R.E. owned and operated a Schedule C sole proprietorship involved in "New Multifamily Housing Construction." R.E. never operated a Schedule C sole proprietorship business nor filed a Schedule C 1040 tax document. A false 2019 Schedule C tax form and a February 1, 2020 business invoice were submitted as part of the fraudulent PPP loan application requesting $20,397 in PPP funds based on these false Schedule C revenues.

D.  On a date unknown to the Grand Jury, **[1] BRANDON MILLER** informed **[2] JARIUS BRUNSON** that he would receive approximately $1,000 of the proceeds obtained from the fraudulent PPP loan, while R.E. would receive approximately $6,000.

E.  On or about April 19, 2021, **[4] AAZJAE KIRK** and **[5] BENJAMIN BRITFORD** text messaged regarding **[4] AAZJAE KIRK**'s fraudulent PPP loan application that was being prepared by **[5] BENJAMIN BRITFORD**. **[4] AAZJAE KIRK** provided **[5] BENJAMIN BRITFORD** with her Social Security Number and picture identification. **[5] BENJAMIN BRITFORD** responded to **[4] AAZJAE KIRK** that he was "trying to knock yours out next." **[5] BENJAMIN BRITFORD** informed **[4] AAZJAE KIRK** that she should find out in nine to twelve days whether her fraudulent PPP loan application was approved. Notably, at no point during this exchange did **[5] BENJAMIN BRITFORD** seek any information from **[4] AAZJAE KIRK** regarding the business entity for which he would request a PPP loan.

F.  On or about April 19, 2021, **[4] AAZJAE KIRK** exchanged text messages

with **[1] BRANDON MILLER** regarding her communications with **[5] BENJAMIN BRITFORD**. Referencing **[5] BENJAMIN BRITFORD**, **[4] AAZJAE KIRK** told **[1] BRANDON MILLER** that she had "somebody who really do this shit that's putting me on game." When **[1] BRANDON MILLER** asked **[4] AAZJAE KIRK** why they should buy the materials and equipment necessary, including items that would allow them to make fraudulent identification cards, to submit fraudulent PPP loans themselves when she already knew someone capable of doing it, **[4] AAZJAE KIRK** responded that "He all the way back in Philly and shit and he stopped he doing shit the smart way... he said he made bout 300,000 and stopped, went and purchased Lumber... got into real estate, he got his own team of construction workers so he just break them off, they build the houses then the flip them and they got a car garage."

G. On or about May 14, 2021, **[4] AAZJAE KIRK's** fraudulent PPP loan application was successfully received by third-party PPP lender Prestamos CDFI, LLC and funded. On or about May 21, 2021, **[4] AAZJAE KIRK** received PPP funds totaling $20,832 into her personal checking account.

All in violation of Title 18, United States Code, Section 286.

FORFEITURE ALLEGATION

THE GRAND JURY FURTHER CHARGES:

1. The allegations contained in this Indictment are re-alleged and incorporated by reference as if fully set forth in support of this forfeiture.

2. Upon conviction of the charge alleged in this Indictment, **[4] AAZJAE KIRK** shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1): any property, real or personal, involved in such offenses, and any property traceable to such property, including but not limited to a money judgment in the amount of $20,832 representing

the value of the property involved in the offense.

3. If any of the property described above, as a result of any act or omission of **[4] AAZJAE KIRK**:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of **[4] AAZJAE KIRK**, up to the value of said property listed above as subject to forfeiture, including but not limited to a money judgment representing the value of said property.

A TRUE BILL

FOREPERSON

MARK H. WILDASIN
UNITED STATES ATTORNEY

JOSHUA A. KURTZMAN
KATHRYN RISINGER
ASSISTANT UNITED STATES ATTORNEYS

TO BE

FILED UNDER SEAL